**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| OTTIS FRANTOM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-18-649 |
| | § | |
| KIRSTJEN M. NIELSEN, | § | |
| SECRETARY, UNITED STATES | § | |
| DEPARTMENT OF HOMELAND | § | |
| SECURITY | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

In this age-discrimination suit, Ottis Frantom alleges that the Department of Homeland Security violated the Age Discrimination in Employment Act when it failed to select him for a reassignment opportunity. (Docket Entry No. 1 at ¶¶ 11–18). The government has moved for summary judgment, Frantom responded, and the government replied. (Docket Entry Nos. 14, 17, 18). Based on a careful review of the motion, the response, the reply, the record, and the applicable law, the court grants summary judgment for the government and, by separate order, enters final judgment. The reasons for the ruling are detailed below.

I. **Background**

Frantom is a 59-year-old deportation officer at the Houston Field Office of Immigration and Customs Enforcement, United States Department of Homeland Security. (Docket Entry No. 14 at 1; Docket Entry No. 17 at 1; Docket Entry No. 17-1 at ¶ 1). He has been employed by Immigration and Customs Enforcement and its predecessor agency, the Immigration and Naturalization Service, since 1990. (Docket Entry No. 17 at 2; Docket Entry No. 17-1 at ¶ 1). Frantom transferred to the

Houston Field Office in April 2016.  (Docket Entry No. 14 at 1; Docket Entry No. 14-5).  Before

then, Frantom was a supervisory detention and deportation officer at the New Orleans Field Office.

(*Id.*).  He has not served in a supervisory capacity since moving to Houston in April 2016.  (Docket

Entry No. 14 at 1).

In November 2016, Acting Houston Field Office Director Bret Bradford, solicited

applications from deportation officers for reassignment to the Office's Compliance Enforcement

Unit.  (Docket Entry No. 14 at 2; Docket Entry No. 14-1 at 1).  Only one position was available.

(*Id.*).  The solicitation stated:

> The field office is soliciting for one (1) Deportation Officer . . . to be re-assigned
> within the field office.  The following position is available:
>
> **Compliance Enforcement Unit / fugitive operations** – The [deportation officer]
> selected for this assignment will be assigned to the variable shift.  Working in [the
> Compliance Enforcement Unit] entails working extensive hours to include early in
> the morning and late into the evening.  Volunteers must be prepared to drive many
> miles throughout the [region], be able to physically respond outside of scheduled
> duty hours to escapes, high profile leads, assistance requests from other agencies, etc.
> Additionally, volunteers must recognize that working in [the Compliance
> Enforcement Unit] includes frequent schedule adjustments to meet the needs of the
> mission.  The majority of [Compliance Enforcement Unit] work is conducted in the
> outside elements wearing ballistic armor and is physically demanding.  Volunteers
> should be tactically sound and maintain high marksmanship skills . . . .
>
> Any interested [deportation officer] should submit a one-page memorandum . . .
> expressing their interest for rotation.  Please include [Immigration and Customs
> Enforcement] experience and training . . . .
>
> Should there be no volunteers, management reserves the right to assign work as
> necessary in the best interest of the operation.

(*Id.*).  Thirteen candidates applied, including Frantom, who was working in the Criminal Alien

Program.  (Docket Entry No. 14 at 2; Docket Entry No. 17 at 2; Docket Entry No. 17-1 at ¶ 3;

Docket Entry No. 18-1).  Bradford selected Daniel Cisneros, a 41-year-old deportation officer, for

the assignment.  (Docket Entry No. 14 at 2; Docket Entry No. 14-3 at 2; Docket Entry No. 17 at 8).

Frantom contacted an Equal Employment Opportunity Counselor in November 2016, alleging age discrimination.  (Docket Entry No. 1 at ¶ 5; Docket Entry No. 14 at 3).  In February 2017, he timely filed a formal complaint with the Equal Opportunity Commission.  (*Id.*).  Frantom filed this suit in February 2018, when he was 58, claiming that the selection of a 41-year old was based on age discrimination and violated the ADEA.  (Docket Entry No. 1 at ¶¶ 10, 15).  He argues that "[d]espite being more qualified for the assignment because of his years of service[, a] younger, less experienced . . . employee[ was] selected for the position with the Compliance Enforcement" Unit.  (*Id.* at ¶ 10).

In November 2018, after discovery, the government moved for summary judgment, contending that Frantom failed to establish a prima facie case of age discrimination because the decision not to select Frantom was not an "adverse employment action" under the ADEA.  (Docket Entry No. 14 at 1).  Even accepting that the selection decision was an adverse employment action, the government argues that Frantom failed to raise a factual dispute material to its legitimate, nondiscriminatory reason for the decision, that Bradford selected Cisneros, the applicant who had the most seniority.  (*Id.*).  Frantom responds that the failure to select him was an adverse employment action because "the position sought was objectively better," and that the government's proffered reason that Cisneros had more seniority than Frantom is "factually false and misguided." (Docket Entry No. 17 at 5, 8).  The government replied, arguing that Frantom "fail[ed] to show that the . . . reassignment was objectively better," and that Cisneros's seniority ranking was accurate under an agreement between the Houston Field Office and the employees' union, Local 3332. (Docket Entry No. 18 at 1; Docket Entry No. 18-3).

**II.     The Legal Standards**

 **A.     Summary Judgment**

"Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Vann v. City of Southaven*, 884 F.3d 307, 309 (5th Cir. 2018) (quotation omitted); *see also* FED. R. CIV. P. 56(a).  "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Burrell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (quoting *Savant v. APM Terminals*, 776 F.3d 285, 288 (5th Cir. 2014)).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial.'"  *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).  While the moving party must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case.  *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).  A fact is material if "its resolution could affect the outcome of the action."  *Aly v. City of Lake Jackson*, 605 F. App'x 260, 262 (5th Cir. 2015) (citing *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response."  *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir.

2014) (quoting *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001)).

"When the moving party has met its Rule 56© burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010); *see Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) ("Needless to say, unsubstantiated assertions are not competent summary judgment evidence."). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Jurach v. Safety Vision, LLC*, 642 F. App'x 313, 317 (5th Cir. 2016) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007).

## B.     The Age Discrimination in Employment Act

"The ADEA prohibits employment discrimination in both the private and local government sectors, and in federal employment." *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (citing 29 U.S.C. § 623(a) (private businesses and local governments); 29 U.S.C. § 633a (the federal government)). Section 623(a)(1) makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Extensive case law governs this provision. *See, e.g.*, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009); *Nicholson v. Securitas Sec. Servs. USA, Inc.*, 830 F.3d

186, 188–89 (5th Cir. 2016); *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922–23 (5th Cir. 2010). In *Gross*, 557 U.S. at 177–78, the Supreme Court contrasted § 623(a)(1) to Title VII of the Civil Rights Act of 1964, holding that while Title VII requires a "motivating-factor" causation standard, § 623(a)(1) requires a plaintiff to "prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Id.*; *see Moss*, 610 F.3d at 922; 42 U.S.C. § 2000e-2(m) (providing that "an unlawful employment practice is established when the complaining party demonstrates that [a prohibited category] was a motivating factor for any employment practice, even though other factors also motivated the practice").

Under the less familiar § 633a(a), "[a]ll personnel actions affecting [federal] employees . . . who are at least 40 years of age . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). The D.C. and Ninth Circuits disagree over whether the "but-for" or the less stringent "motivating-factor" causation standard applies to § 633a(a) given its textual differences from § 623(a)(1), *compare Shelley v. Geren*, 666 F.3d 599, 608 (9th Cir. 2012) ("but-for" standard), *with Ford v. Mabus*, 629 F.3d 198, 207 (D.C. Cir. 2010) ("motivating-factor" standard), and the Fifth Circuit has not yet resolved the issue, *see Leal*, 731 F.3d at 412 (declining to address causation because the plaintiff satisfied the "but-for" and "motivating-factor" standards); *Logan v. Sessions*, 690 F. App'x 176, 179–80 (5th Cir. 2017) (declining to address causation because the plaintiff failed to satisfy either the "but-for" or "motivating-factor" standards); *Fuller v. Panetta*, 459 F. App'x 436, 438 (5th Cir. 2012) (same); *see also Velazquez-Ortiz v. Vilsack*, 657 F.3d 64, 74–75 (1st Cir. 2011) (same); *Babb v. Sec. Dep't of Veterans Affairs*, 743 F. App'x 280, 287 (11th Cir. 2018) (following binding precedent that used the "but-for" standard under § 633a(a)).

### III.	Analysis[1]

#### A.	The Governing Statutory Provision

The first issue is whether § 623(a)(1) or § 633a(a) applies.  In *Leal*, 731 F.3d at 412, the

parties disputed whether the private-sector or federal-employment provision governed the age-

discrimination claim brought by an Army civilian.  *Id.*  The Fifth Circuit observed that the

"complaint broadly identifie[d] that [the plaintiff sued] under '29 U.S.C. § 621, *et seq.*,' without

specific reference to either § 623(a)(1) or § 633a(a)." *Id.*  The court held that § 633a(a) controlled

because the defendant conceded that the federal-employment provision was the applicable statute;

the district court referred to § 633a(a) in its summary judgment analysis; and the Department of

Defense investigated the plaintiff's claims.  *Id.*

Frantom's complaint "broadly identifies" that he sued under the "ADEA."  (Docket Entry

No. 1 at ¶ 15 ("Plaintiff has been damaged by Defendant's violation of the ADEA.")); *see id.* at 1

(referring to "the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621"); *id.* at ¶ 3

(asserting that the court has federal-question jurisdiction under 29 U.S.C. § 621 *et seq.*)).  While the

complaint fails to name a specific provision, the government appears to concede that § 633a(a)

applies.  (Docket Entry No. 14 at 4 (reciting § 633a(a) as the governing provision in its summary-

---

[1] The summary judgment evidence includes: Bradford's email announcing the reassignment position, (Docket Entry No. 14-1); the position description for Immigration and Customs Enforcement Deportation Officers, GS-1801-12, (Docket Entry No. 14-2); Patricia Ridley's email to Bradford listing the reassignment applicants in order of seniority, (Docket Entry No. 14-3 at 1); Bradford's email to Ridley selecting Cisneros for the position, (Docket Entry No. 14-3 at 2); Bradford's declaration, (Docket Entry No. 14-4); Standard Form 50, "Notification of Personnel Action," summarizing Frantom's transfer from the New Orleans Field Office to the Houston Field Office, (Docket Entry No. 14-5); the Houston Field Office's Voluntary Reassignment Policy, (Docket Entry No. 14-6); Frantom's declaration, (Docket Entry No. 17-1); an Immigration and Customs Enforcement handbook entitled, "Enforcement and Removal Operations: Leadership Career Progression for Law Enforcement," (Docket Entry No. 17-2); Frantom's application for reassignment, (Docket Entry No. 18-1); Cisneros's application for reassignment, (Docket Entry No. 18-2); and the Houston Field Office's Calculation of Seniority Policy, (Docket Entry No. 18-3).

judgment motion)).  Although a private firm investigated Frantom's claim, he was, and continues to be, a federal employee.  (Docket Entry No. 1 at ¶ 1; Docket Entry No. 14 at 1).  As in *Leal*, § 633a(a) controls.  *Leal*, 731 F.3d at 412–13.

### B.  The Prima Facie Case

As a threshold matter, Frantom must establish a prima facie case of age discrimination under § 633a(a).  *See id.* at 413 (the plaintiff stated a claim under § 633a(a) by alleging facts that could show a prima facie case); *see also Davis v. Chevron, U.S.A., Inc.*, 14 F.3d 1082, 1084–85 ("[The plaintiff] must present a *prima facie* case.  Otherwise, there can be no genuine issue as to any material fact, [because] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." (quotation omitted)).  To make out a prima facie case, Frantom is "required to prove: 1) '[he is] within the protected class'; 2) '[he is] qualified for the position'; 3) '[he] suffered an adverse employment decision'; and 4) '[he was] treated less favorably than similarly situated younger employees (*i.e.*, suffered from disparate treatment because of membership in the protected class).'" *Leal*, 731 F.3d at 410–11 (quoting *Smith v. City of Jackson*, 351 F.3d 183, 196 (5th Cir. 2003)).  The parties dispute only whether not selecting Frantom was an adverse employment action.  (*See* Docket Entry No. 14 at 5; Docket Entry No. 16 at 5).

The government argues that Frantom fails to state a prima facie case because not selecting a particular applicant "for the voluntary reassignment is not an adverse employment decision." (Docket Entry No. 14 at 5).  The denial of a lateral transfer, according to the government, is an adverse employment action only "if the position sought was objectively better." (*Id.* (quoting *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 268 (5th Cir. 2015)).  Relying on the

solicitation email and the agency's description of deportation officers' duties, the government contends that Frantom cannot show that reassignment to the Compliance Enforcement Unit is objectively better than his current position in the Criminal Alien Program. The reassignment would not have resulted in increasing his pay or giving him a more prestigious job title or greater responsibilities. (*Id.* at 6). The government observes that while the reassignment position demanded "extensive hours," "driving long distances," "frequent schedule adjustments," "staying physically fit," "maintain[ing] marksmanship skills," and "working in the outside elements," these requirements are listed in "the general position description for deportation officers that all [Immigration and Customs Enforcement] Deportation Officers," including Frantom, must meet. (*Id.* citing (Docket Entry No. 14-2)). The government also contends that the selection process was neither complex nor competitive, but based on seniority among qualified applicants, and that the solicitation announcement did not "suggest that reassignment would provide greater opportunities for career enhancement." (*Id.*).

Frantom responds that the reassignment position was objectively better than his current job and that not selecting him was an adverse employment action. (Docket Entry No. 17 at 6). Frantom argues that the selection process was competitive because Bradford asked volunteers to submit written applications, and 13 employees applied. (*Id.*). Frantom claims that while the position did not include additional compensation, if selected, he would have received a "Home-to-Work" vehicle, an alleged economic perk. (*Id.*). He contends that more hours and a flexible schedule are benefits, and that the transfer would have put him in the field to respond to "escapes, high profile leads, [and] assistance requests from other agencies," demonstrating "an increase in job responsibilities." (*Id.* quoting (Docket Entry No. 14-1 at 1)). Frantom argues that the reassignment would provide better

opportunities for career advancement, and that the government's evidence "stress[es] the importance of field experience being critical to the progression of a [deportation officer's] career." (*Id.* at 7).

The government replies that Frantom's response fails to identify evidence supporting an inference that the Compliance Enforcement Unit is superior to his current position. (Docket Entry No. 18 at 2). The selection process was neither complex nor competitive, the government argues, because it was a voluntary reassignment, only 13 candidates applied, and Bradford required all applicants to submit only a one-page memorandum describing their work experience. (*Id.*). The government contends that Frantom's affidavit contains only his "subjective belief" and conclusory statements, not competent summary judgment evidence. (*Id.*).

"It is well established that the denial of a purely lateral transfer is not an adverse employment action redressible under" the ADEA. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007) (citing *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999)). But "the denial of a transfer *may* be the objective equivalent of the denial of a promotion, and thus qualify as an adverse employment action, even if the new position would not have entailed an increase in pay or other tangible benefits[,] if the position sought was objectively better." *Jenkins*, 784 F.3d at 268 (quoting *Alvarado*, 492 F.3d at 614) (emphasis in original). The court "evaluate[s] whether the position sought [in the Compliance Enforcement Unit] 'entails an increase in compensation or other tangible benefits; provides greater responsibility or better job duties; provides greater opportunities for career enhancement; requires greater skill, education, or experience; is obtained through complex selection process; or is otherwise objectively more prestigious.'" *Id.* (quoting *Alvarado*, 492 F.3d at 614).

In *Alvarado*, 492 F.3d at 609, a Texas Department of Public Safety employee, Alvarado, sued the Texas Rangers, alleging that "she was denied appointment to [the Rangers] because of her sex . . . in violation of Title VII." *Id.* The Fifth Circuit held that "there was evidence sufficient to raise a genuine issue of material fact on whether [not selecting] Alvarado's [for] the Rangers [position] was an adverse employment action" because the record showed that:

> (1) the Rangers are an elite unit within [the Department of Public Safety] and have a unique and illustrious history; (2) an appointment to the Rangers is, according to [the Department of Public Service], "one of the most competitive goals to which a law enforcement officer may aspire"; (3) the "promotion and selection" process is complex and rigorous; (4) the competition to become a Ranger is "fierce," as evidenced by the large number of applicants for the few available positions, and is steeper than the competition for positions with any of [the Department of Public Safety's] other divisions; (5) the minimum qualifications for becoming a Ranger Sergeant are higher than the minimum qualifications for becoming a Sergeant with Special Crimes; (6) the Rangers work under less supervision and have greater job responsibilities . . . ; (7) although [Department of Public Safety] regulations do not officially classify Ranger appointments as promotions because they do not entail an increase in pay, receiving an appointment to the Rangers is generally viewed . . . as a promotion; and (8) newly appointed Rangers are honored at a special [ceremony].

*Id.* at 614–15.

By contrast, in *Jenkins*, 784 F.3d at 265, a district fire chief, Jenkins, sued the City of San Antonio Fire Department, claiming that his duties had been "realigned" based on his age and race. *Id.* The Fifth Circuit affirmed the district court's grant of summary judgment, finding "that Jenkins did not suffer an adverse employment action." *Id.* at 268. The court reasoned that Jenkins "would not benefit financially[,] nor d[id] he offer evidence, beyond his subjective beliefs, that the . . . position was more prestigious or required greater skill, education, or experience than his [current role]." *Id.*

It is undisputed that the reassignment position Frantom sought was a lateral transfer. (Docket Entry No. 14 at 5; Docket Entry No. 17 at 5). The record shows, and Frantom does not dispute, that

the reassignment would not include a promotion, change in title, or an increase in pay. (Docket Entry No. 17 at 5–7). As in *Jenkins*, 784 F.3d at 268, Frantom relies on his own affidavit, contending that the position is objectively better because it would give him a home-to-work vehicle, increased duty time, more prestige, and more flexible hours. (Docket Entry No. 17-1 at ¶ 3). The government argues that the vehicle is not an economic perk because of the amount of driving, and that the physical demands and requirements of the position did not show an objectively better work environment.

An employee's subjective beliefs that a lateral transfer is a better job are not sufficient to raise a fact dispute. *Sanchez v. Dall./Fort Worth Int'l Airport Bd.*, 438 F. App'x 343, 346–47 (5th Cir. 2011) (citing *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 n.49 (5th Cir. 2005)). The facts Frantom identifies show a different, but not objectively better, position. *See Jenkins*, 784 F.3d at 268; *Alvarado*, 492 F.3d at 614.

Frantom attempts to show a factual dispute by comparing his role at the Criminal Alien Program to the reassignment position. (Docket Entry No. 17 at 6). He argues that because Compliance Enforcement Unit officers wear body armor, respond to escapes, and must be physically fit, the position would have increased his job responsibilities, which involves "completing and filing paperwork." (*Id.*). He also argues that the reassignment would provide greater opportunities for career advancement because Compliance Enforcement Unit officers gain "field experience" and because it is a "quality job." (*Id.* at 7).

Accepting that Frantom's current position is a "desk job," the record shows only the positions are different, but not that the Compliance Enforcement Unit is objectively better than the office-based Criminal Alien Program. Frantom's affidavit expresses his subjective preference for

12

reassignment, but the evidence he points to does not indicate that working in the Compliance

Enforcement Unit would have increased his daily responsibilities or given him supervisory authority.

Frantom's argument about career progression lacks merit because the handbook on which he relies

states that the agency "recognizes a balance of both Headquarters assignments and field experience

is critical to the natural progression of a[] leader's career." (Docket Entry No. 17-2 at 10). He

identifies no other evidence suggesting that the reassignment would have provided greater

opportunities for career advancement.

In addition, the government correctly argues, based on undisputed record evidence, that the

selection process was neither complex nor competitive. (Docket Entry No. 14 at 6). Bradford

solicited volunteers. (Docket Entry No. 14-1 at 1). He reserved the right to choose a candidate if

no qualified person applied. (*Id.*). And he required candidates to submit only a one-page

memorandum. (*Id.*). Unlike *Alvarado*, 492 F.3d at 614–15, the record in this case does not show

that the Compliance Enforcement Unit was a coveted position in the agency. There is no evidence

that assignment to the division was "one of the most competitive goals to which a [deportation

officer] may aspire"; or of a rigorous selection process, "fierce" competition, or other similar

evidence that the reassignment sought was clearly more prestigious and more likely to lead to career

advancement.

Because Frantom "does [not] offer evidence, beyond his subjective beliefs, that the

[reassignment] position was" objectively better than his position in the Criminal Alien Program, he

fails to show that the decision to select another applicant was an adverse employment action.

*Jenkins*, 784 F.3d at 268. He cannot establish a prima facie case of age discrimination, warranting

summary judgment. Even if a prima facie case was present, summary judgment is nonetheless

warranted.

**C.    Even Accepting that Frantom Established a Prima Facie Case, He Fails to Raise a Factual Issue Material to Causation**

The Fifth Circuit has declined to establish a causation standard under § 633a(a).  Although the government admits that § 633a(a) controls, it relies on *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010), a decision concerning § 623(a)(1), to argue that Frantom must prove that, "but for" his age, Bradford would have selected him for the reassignment.  (Docket Entry No. 14 at 5, 7).  Frantom's complaint and response to the government's motion do not address causation.  (*See* Docket Entry Nos. 1, 17).  The court does not reach the issue because, even accepting that Frantom establishes a prima facie case under § 633a(a), he fails to show that age was either a "motivating factor" or the "but-for" cause of the failure to select him.

**1.    Age was Not the "But-For" Cause of the Selection Decision**

Frantom concedes that he has not proffered direct evidence of age discrimination.  (Docket Entry No. 17 at 4).  Under the "but-for" standard, when, as here, the plaintiff bases his claim on circumstantial evidence, the court uses the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).  *See Nicholson*, 830 F.3d at 189.  Assuming that Frantom has made out a prima facie case, "the burden shifts to [the government] to provide a legitimate, nondiscriminatory reason for the employment decision."  *Id*. (quoting *Moss*, 610 F.3d at 922).  "If [the government] articulates such a reason, [Frantom] must then rebut [the government's] explanation as pretextual, that is," but for his age, Bradford would have selected him for the assignment.  *Id*. (citing *Moss*, 610 F.3d at 922); see *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 316–17 (5th Cir. 2004).  "'[B]ut-for' cause does not mean 'sole cause.'"  *Leal*, 731 F.3d at 415.  "An employer may be liable under the ADEA if other factors contributed to its taking the

adverse action, as long as 'age was the factor that made a difference.'" *Id.* (quoting *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1277 (10th Cir. 2010)).

Meeting its burden under *McDonnell Douglas*, the government explains that "Bradford selected . . . Cisneros for the reassignment opportunity because Cisneros was the most senior officer who applied for the reassignment." (Docket Entry No. 14 at 7). According to the government, Bradford relied on Cisneros's seniority because he "received an email listing the seniority ranking of all applicants" showing that "Cisneros had a seniority ranking of 50, which was higher than [Frantom's] ranking of 155." (Docket Entry No. 18 at 3). The government argues that "[i]n addition to Cisneros, nine other applicants had a higher seniority ranking than" Frantom. (*Id.*). Because the rankings did not include the applicants' ages or birth dates, the government contends, there "is no indication that Bradford considered or was influenced by [Frantom's] age in making the selection decision." (*Id.*).

Frantom responds that the government's justification is pretextual because it is "false or unworthy of credence." (Docket Entry No. 17 at 7–8 (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)). Frantom argues that because "Cisneros, a 41 year-old deportation officer, does not have more years as a Deportation Officer than Frantom," the government's proffered reason is "factually false and misguided." (*Id.* at 8). According to Frantom, he "has been with [Immigration and Customs Enforcement] since 1990, serving in various capacities including 'Supervisory Deportation Officer.'" (*Id.*). Frantom also contends that the government's justification is pretextual because "there was no mention that the [reassignment] selection would be based on a Deportation Officer's seniority." (*Id.*).

15

The government replies that Frantom "appears to equate age with seniority by suggesting that, because Cisneros is younger, Cisneros has less seniority than he has." (Docket Entry No. 18 at 4). The government argues that Frantom "overlooks the Calculation of Seniority Agreement between the Houston Field Office Director and Union President, which provides that seniority will be based on an officer's enter on duty date into their current position." (*Id.*). According to the government, when Bradford made the decision, Cisneros had more seniority than Frantom because Cisneros had been working at the Houston Field Office for years, "whereas [Frantom] had only been there seven months." (*Id.*). The government contends that Frantom "fails to produce evidence demonstrating that [its] reason for [the] selection decision is . . . pretext for discrimination." (*Id.*).

The government presents uncontroverted evidence that Bradford received an email listing the reassignment applicants in order of seniority, (Docket Entry No. 14-3); the email ranked Cisneros first and Frantom eleventh, (*id.*); Bradford responded to the rankings email within minutes, choosing Cisneros, (Docket Entry No. 14-3); the Houston Field Office determines seniority by an employee's tenure at their current duty station, (Docket Entry No. 18-3); the Houston Field Office makes voluntary reassignment decisions based "primarily" on seniority among qualified applicants, (Docket Entry No. 14-6); when Bradford made the decision, Cisneros had worked at the Houston Field Office for 18 years, (Docket Entry No. 18-2); and when Bradford selected Cisneros, Frantom had worked at the Houston Field Office for seven months, (Docket Entry No. 14-5). In addition, Bradford testified that he selected "Cisneros because he had the highest seniority of all the officers who applied," and that he "did not consider age . . . or any other protected characteristic in making [the] selection decision." (Docket Entry No. 14-4). Because the government articulated—and submitted evidence showing—that Bradford relied only on Cisneros's seniority in making the

16

selection decision, Frantom must rebut that reason by identifying evidence raising a factual dispute material to deciding whether, but for his age, he would have received the assignment. *Nicholson*, 830 F.3d at 189.

"In determining whether [Frantom's] rebuttal precludes summary judgment, '[t]he question is whether [he] has shown there is a genuine issue of material fact as to whether [the government's justification] was pretextual.'" *Moss*, 610 F.3d at 922 (quoting *Jackson*, 602 F.3d at 378–79). Frantom "may show pretext either through evidence of disparate treatment or by showing that [the government's] explanation is false or 'unworthy of credence.'" *Id.* (quotation omitted). "A showing that [Frantom] was 'clearly better qualified' (as opposed to merely better or as qualified) than [Cisneros] will be sufficient to prove that [the government's] proffered reason[ is] pretextual." *Id.* (quotation omitted).

Frantom fails to identify any evidence supporting an inference of pretext. He fails to dispute the government's arguments or evidence, instead contending that because he is older than Cisneros and had worked as a deportation officer since 1990, the government's justification is "factually false." (Docket Entry No. 17 at 7–8). Frantom's unsubstantiated assertion that it is "false and misguided" for the government to claim that Bradford relied on seniority is "not competent summary judgment evidence." *Forsyth*, 19 F.3d at 1533. His argument does not raise a genuine factual dispute material to deciding whether Bradford relied on the applicants' seniority rankings, because the Houston Field Office determines seniority based on an employee's tenure at their current duty station, not their age or length of service with the agency. Frantom neither demonstrates that Bradford's explanation was false nor shows that he was "clearly better qualified" than Cisneros. *Moss*, 610 F.3d at 922. Because Frantom fails to controvert the government's justification, summary

17

judgment is warranted under the "but-for" standard.

### 2. Age was Not a "Motivating Factor" in the Selection Decision

Frantom fails to show that age was a "motivating factor" in Bradford's decision, for the same reasons. The court examines whether age motivated Bradford's decision by "using a 'modified *McDonnell Douglas*' test, under which, after [the government] has offered nondiscriminatory reasons for the adverse employment action, [Frantom] must offer sufficient evidence to create a genuine issue of material fact that the [the government's] reason, while true, is only one of the reasons for its conduct and that another motivating factor was [Frantom's age.]" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)); *see also Ford*, 629 F.3d at 206 ("[P]laintiffs may . . . prevail by proving that age was a factor in the employer's decision."); *Hillstrom v. Best W. TLC Hotel*, 354 F.3d 27, 31 (1st Cir. 2003) ("[P]laintiffs must present enough evidence to permit a finding that there was differential treatment in an employment action and that the adverse employment decision was caused at least in part by a forbidden type of bias."); *Logan v. Holder*, No. 13-CV-9000, 2016 WL 2354846, at *4 (W.D. La. May 3, 2016), *aff'd sub nom. Logan*, 690 F. App'x at 177.

While Frantom relies on a pretext theory of discrimination, he fails to identify evidence supporting an inference that age factored into Bradford's decision, or to controvert the record evidence that age was not a factor. Frantom does not, for example, identify any evidence that Bradford reviewed personnel records containing the applicants' birth dates, ages, or length of government service. He offers only two exhibits, his own affidavit and an Immigration and Customs Enforcement leadership handbook, neither of which suggests that Bradford knew of or considered Frantom's—or any applicant's—age. (Docket Entry Nos. 17-1, 17-2). Based on undisputed

evidence, the court finds that, as a matter of law, age was not a factor in the selection of Cisneros over 12 other applicants, including Frantom, under either the "but-for" or "motivating-factor" standards.

## IV.     Conclusion

The court grants the government's motion for summary judgment.  (Docket Entry No. 14). Final judgment is separately entered.

SIGNED on January 11, 2019, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge